COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-397-CV

 

 

TAMMY POTEET AND                                                        APPELLANTS

CHELCEE
POTEET

                                                   V.

 

ROGER KAISER,
SANDY KAISER,                                            APPELLEES

FARMERS
GROUP, INC.

D/B/A
FARMERS INSURANCE GROUP,

FARMERS
INSURANCE EXCHANGE,

AND
FIRE INSURANCE EXCHANGE

 

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellants Tammy and Chelcee
Poteet (AAppellants@) appeal the
trial court=s granting
of Appellees Roger and Sandy Kaiser=s (AKaisers@) no-evidence motion for summary judgment.  We affirm. 
Appellants also appeal the trial court=s granting of Appellee Farmers Group, Inc.=s (AFarmers
Group@) traditional and no-evidence motions for summary judgment.  We affirm in part and reverse and remand in
part. 

BACKGROUND 

Appellants sued the Kaisers
and Farmers Group, Appellants= insurer,[2]
as a result of damages allegedly caused by the November 2002 discharge of black
smoke and soot from the central air‑conditioning and heating system in
the home they purchased from the Kaisers in May 2002.








Before purchasing the home,
Appellants hired an independent inspector, who found large amounts of rust
debris in the burner chambers of the central heating units and reported that a
Heating Ventilation and Air Conditioning (AHVAC@) mechanic
should clean and inspect it, and Appellants made the completion of this
cleaning and inspection a condition of sale. 
Appellants claim that the Kaisers assured them that they had it cleaned
but that Mr. Kaiser actually cleaned the unit himself instead of hiring an HVAC
professional.  After the November 2002
discharge, Appellants hired a local air‑conditioning repair company to
check the furnace; the technician, Bobby Joe Swafford, informed them that both
heat exchanger units (i.e., furnaces) had cracks and that they should be
replaced, which he later did for Appellants under their home warranty.

Appellants reported the
incident to Farmers Group, who had the home inspected and initially
determined, based on the information it had gathered
at that time, that the discharge of soot was produced by
the heat exchangers. Therefore, Farmers Group concluded that the soot had been caused by a
covered event: Asudden and accidental damage from smoke.@ Farmers Group began funding remediation and repair, including
Appellants= temporary
relocation, carpet replacement, repainting the ceiling, and cleaning the home=s contents.

Appellants were dissatisfied
with Farmers Group=s remediation
efforts and claimed that the soot continued to cause them respiratory problems
and that the home remained uninhabitable. 
Appellants allege that Farmers Group failed to hire a Certified
Industrial Hygienist (ACIH@) to investigate, develop a remediation plan, and confirm that the
soot had been cleaned up.  Additionally,
Appellants claim that Farmers Group informed Appellants that they had to pay
for tests on the indoor air quality of the home if they wanted them.








Appellants hired a CIH,
Robert Miller, to investigate whether soot was actually present in the
household.  While Miller inspected the levels of soot, he did not perform tests to determine
the cause of the soot.  His test results
showed that soot was still present in the home.

After testing Appellants= house, Miller
wrote a letter to Appellants= counsel, Denise
Martinez, recommending that Appellants not live in the house because he had
determined that the house was unsafe.  In
an attempt to clarify certain allegations by Appellant Tammy Poteet (ATammy@) regarding
ongoing damage and additional living expenses, Farmers Group requested an
Examination Under Oath (AEUO@), as permitted by
the insurance contract. Martinez argued that the EUO request was untimely but
eventually advised Tammy to submit to the request.  Unable to
agree with Appellants on an amount of any additional damages, Farmers Group
invoked the appraisal provision of the insurance contract and later sued
Appellant Tammy Poteet, as provided for in the provision so that a district
court could appoint an umpire to facilitate the process.  The suit to appoint an umpire was dismissed
nearly one year and eight months later for want of prosecution.[3]








In May 2004, Appellants sued
the Kaisers for fraud, negligent misrepresentation, deceptive trade practices,
and fraud in a real estate transaction. 
Appellants also sued Farmers Group for insurance code violations,
deceptive trade practices, negligent misrepresentations, breach of contract,
and breach of the duty of good faith and fair dealing.  The Kaisers filed a no-evidence motion for
summary judgment, which the trial court granted.  Farmers Group filed traditional and no‑evidence
summary judgment motions and a motion to strike Appellants= expert Miller. The trial court granted Farmers Group=s motion to strike Miller in part as well as Farmers Group=s combined motion for summary judgment.

KAISERS= NO-EVIDENCE SUMMARY JUDGMENT

In their first issue,
Appellants argue that the trial court erred in granting the Kaisers= no-evidence motion for summary judgment.  The Kaisers asserted that Appellants had no
evidence to prove that the furnaces caused Appellants= injuries.  The Kaisers stated
that because Appellants presented no evidence that the furnaces caused any
damage, Appellants had no evidence that the Kaisers= misrepresentations, if any, caused damage; thus, all of Appellants= causes of action must fail.

Standard of Review








After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 207 (Tex. 2002).  The trial court
must grant the motion unless the nonmovant produces summary judgment evidence
that raises a genuine issue of material fact. 
See Tex. R. Civ. P.
166a(i) & cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002).

When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,
199 S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan Antonio 1998, pet. denied). 
Less than a scintilla of evidence exists when the evidence is so weak
that it does nothing more than create a mere surmise or suspicion of a
fact.  Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983).

Causation








We must determine whether
Appellants= summary
judgment evidence provided more than a scintilla of evidence to create a fact
issue on whether the furnaces caused the alleged damage to Appellants= home.  The scintilla test
cannot be met by producing a bare expert opinion.  Merrell Dow Pharm., Inc. v. Havner,
953 S.W.2d 706, 712 (Tex. 1997); Weiss v. Mech. Assoc. Servs., Inc., 989
S.W.2d 120, 125 (Tex. App.CSan Antonio 1999, pet. denied).  The no-evidence standard requires more than
looking only to the words that appear in the transcript of the testimony; we
must look to see whether there is in fact some evidence.  See Havner, 953 S.W.2d at 712 (citing Schaefer
v. Tex. Employers= Ins. Ass=n, 612 S.W.2d 199, 205 (Tex. 1980)).  We must also delve into expert opinion to
determine reliability.  See Havner,
953 S.W.2d at 712; Weiss, 989 S.W.2d at 125.  If there are other plausible causes of the
injury or condition that could be negated, the plaintiff must offer evidence
excluding those causes within reasonable certainty.  Havner, 953 S.W.2d at 720; Weiss,
989 S.W.2d at 125.  While causation may
be proved by expert testimony, the probability about which the expert testifies
must be more than coincidence for the case to reach a jury.  Schaefer, 612 S.W.2d at 202; Weiss,
989 S.W.2d at 125.








Proof other than expert
testimony will constitute some evidence of causation only when a layperson=s general experience and common understanding would enable the
layperson to determine from the evidence, with reasonable probability, the
causal relationship between the event and the condition.  Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 583 (Tex. 2006).  Expert testimony
is required when an issue involves matters beyond jurors= common understanding.  Id.

Appellants argue that they
produced more than a scintilla of probative evidence that the furnaces caused
their damages based on the affidavit of HVAC technician Bobby Joe Swafford, the
property claims investigation log produced by Farmers Group, excerpts from the
deposition testimony of Tammy, and excerpts from the deposition testimony of
Appellants= expert
Miller.

1. Affidavit of Bobby Joe Swafford

Swafford works for Arctic
Cooling & Heating as an air conditioning and heating technician.  He serviced Appellants= heating and air conditioning units and inspected them for leaks.  Swafford also checked carbon monoxide levels
in Appellants= house after
running the heating units and found 10 parts per million of carbon monoxide.[4]  In his affidavit, Swafford states that he
found leaks in both of the Appellants= central heating units.  He
stated further that he Abelieve[d]
that the elevated carbon monoxide levels and discoloration of the carpets were
a direct result of the leaking heat exchangers.@








To the extent that Swafford
testified as a nonexpert, we hold that the combustion process of a heating
furnace is a matter beyond a juror=s common understanding; thus, a determination of causation in this
case requires expert testimony.  See
id.  And to the extent that
Swafford testified as an expert on the heating systemCan issue not brought before the trial courtChis conclusions must be based on more than a belief, as a bare expert
opinion does not satisfy the scintilla test. 
See Havner, 953 S.W.2d at 711; Weiss, 989 S.W.2d at
125.  While Swafford mentions
discoloration of carpet, he never mentions soot or how any soot resulted from
the cracked heat exchangers.  Thus, he
failed to establish the necessary links between the holes in the heat
exchangers and the resulting process that allegedly caused the damages
complained of by Appellants.  Appellants
cannot defeat a no-evidence summary judgment on Swafford=s bare opinion regarding the cause of the injury.  For these reasons, we conclude that Swafford=s affidavit does not raise a genuine issue of material fact on
causation.

2. Farmers Group Investigation Log 

The Kaisers objected to the
use of the investigation log as summary judgment evidence, asserting that it
contained double hearsay, but the trial court never ruled on the objections.
Therefore, without a court order sustaining the objection, the investigation
log is proper summary judgment evidence. 
See Stewart v. Sanmina Texas L.P., 156 S.W.3d 198, 207 (Tex. App.CDallas 2005, no pet.).








The investigation log
consists of secondhand technician reports regarding the situation at Appellants= house as recorded by Greg Simms, an employee of Farmers Group.  The recount of Swafford=s observations in the investigation log provides somewhat more detail
than Swafford=s sworn
affidavit about the relationship between the cracks in the heat exchangers and
the resulting soot; it states that the fan sucked the flame into the duct
causing soot.  However, there is no
indication in the secondhand account that Swafford actually saw the flame
sucked into the duct or whether this was an assumption on his part.  Swafford failed to state whether there was
soot inside the heat exchangers that would support this theory or whether he
even looked inside the heat exchangers at all. 
In other words, the investigation log provides little actual evidence of
what occurred in Swafford=s inspection
and is therefore unreliable.  Thus, we
hold that this was no evidence as to causation.

3. Deposition
Testimony of Appellant Tammy Poteet








In their response, Appellants
relied on Tammy=s affidavit
to the extent that she claimed she saw a Abig ball of black smoke@ come out of the vent when the heater was running.  She also described in her deposition the
physical conditionsCheadaches,
nausea, eyes burningCof the
family members that night.  However, the
issue here is what caused the soot, not whether it caused any damage.  And because the combustion process of a
heating furnace is a condition that involves matters beyond jurors= common understanding, expert testimony is required to determine
causation in this case.  See Tamez,
206 S.W.3d at 583.  Thus, this
circumstantial evidence is not enough to preclude summary judgment.

4. Deposition Testimony of Robert Miller,
Certified Industrial Hygienist 

Appellants hired Miller to
inspect their home and test for soot.  In
support of their response, Appellants attached only excerpts of Miller=s deposition.  Miller admitted
in his deposition that by testing and observing Appellants= house, his objective was to determine the presence of soot, not the
cause of it.  Further, Miller admitted
that he did not perform a detailed examination of the reported cracks in the
heat exchangers nor did he look for soot inside them.  Thus, the evidence fails to show that Miller
ever investigated whether there was in fact a combustion incident.  After testing the house, Miller concluded
that there was soot present in the house and opined that the cause of the soot
was the home=s furnace
and heating system.  He based his
determination on Tammy=s
observations and the extent of his finding of soot in the house.








Additionally, Miller stated
that there were multiple sources of the soot and that based on his testing for
the presence of soot and conversations with Tammy, he thought the primary
source was the heating system.  However,
because Miller conducted no tests to determine the cause of the soot, based his
opinion on observations of another, and further, because he could not rule out
other potential sources that he admitted probably caused the soot, we hold that
his opinion as to the source of the soot is no evidence.[5]

Although Appellants might be
able to speculate on the source of the soot through circumstantial evidence, he
is precluded from stacking inference upon inference in forming his opinion of
causation.  See Weiss, 989
S.W.2d at 126.  Furthermore, Miller=s testimony in support of Appellants= response is devalued because he was unable to rule out other
potential causes of the soot that he admitted probably caused the damage.  See id.

 

 








Conclusion

We hold that Appellants
failed to present evidence to raise a fact issue that the source of the soot
was a faulty furnace system; therefore, they failed to present evidence that
false representations, if any, by the Kaisers regarding the cleaning of the HVAC
units caused Appellants=
damages.  See Tex. Bus. & Com. Code ' 17.50 (Vernon Supp. 2007) (requiring that false, misleading, or
deceptive acts were the producing cause of the injury); Johnson &
Johnson Med., Inc. v. Sanchez, 924 S.W.2d 925, 929B30 (Tex. 1996) (stating that an essential element of common law fraud
is that a false representation caused injury); Fed. Land Bank Ass=n of Tyler v. Sloane, 825 S.W.2d
439, 442 (Tex. 1991) (stating that an essential element of negligent
misrepresentation is that false information caused pecuniary loss); Robbins
v. Capozzi, 100 S.W.3d 18, 26 (Tex. App.CTyler 2002, no pet.) (stating the an essential element of fraud in the
real estate transaction is that a false representation caused injury).  Therefore, the trial court did not err in
granting the Kaisers= no-evidence
motion for summary judgment. 
Accordingly, we overrule Appellants= first issue.

FARMERS GROUP=S NO-EVIDENCE AND TRADITIONAL SUMMARY JUDGMENTS








In their second issue,
Appellants argue that the trial court erred in granting Farmers Group=s no-evidence motion for summary judgment, in which Farmers Group
argued that Appellants had no evidence to support their breach of contract,
negligent misrepresentation, and DTPA claims. 
In their third issue, Appellants argue that the trial court erred in
granting Farmers Group=s
traditional motion for summary judgment, in which Farmers Group asserted that
the negligent misrepresentation and DTPA claims were negated as a matter of
law.

Standard of Review

We will review Farmers Group=s no-evidence summary judgment under the same standard provided in the
discussion above.  See Tex. R. Civ. P. 166a(i) & cmt.; Grant,
73 S.W.3d at 215.  To the extent we
address Farmers Group=s
traditional motion for summary judgment, we will conduct our review under the
well established standard, which states that a defendant who conclusively
negates at least one essential element of a cause of action is entitled to summary
judgment on that claim.  IHS Cedars
Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798
(Tex. 2004); see Tex. R. Civ. P.
166a(b), (c).  When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr., 143 S.W.3d at 798.

 








Breach of Contract

Appellants assert that
Farmers Group breached the insurance contract by failing to (1) timely and
completely pay the claim, and repair Appellants= home, (2) complete the appraisal process once initiated, (3) timely
ask for an EUO, and (4) properly investigate. 
For each allegation, Farmers Group challenged the elements of breach and
damages.

1. Failure to Timely and Completely Pay
the Claim, and Repair Appellants= Home

Appellants argue that Farmers
Group did not properly repair the home and further that it failed to fully pay
the claim.  Farmers Group maintains that
Appellants have not proved coverage, meaning that they failed to delineate which
part of the loss resulted from a covered loss, if any, and which resulted from
a non-covered loss.








Because the cause of the
condition could have come from a combination of covered and non-covered perils,
Appellants had the burden under the doctrine of concurrent causes to segregate
the damages and determine which part of the damages were attributable solely to
the covered peril.  See Allison v.
Fire Ins. Exchange, 98 S.W.3d 227, 258 (Tex. App.CAustin 2002, pet. granted, judgm=t vacated w.r.m.); Wallis v. United Servs. Auto Ass=n, 2 S.W.3d 300, 302B03 (Tex. App.CSan Antonio
1999, pet. denied).  The doctrine of
concurrent causation is not an affirmative defense or an avoidance issue;
rather, it is a rule embodying the basic principle that the insureds are not
entitled to recover under their insurance policies unless they prove the damage
is covered by the policy.  Allison,
98 S.W.3d at 258; Wallis, 2 S.W.3d at 303.  Thus, it follows that Appellants can recover
damages only for a loss that is covered under the policy.  See Allison, 98 S.W.3d at 258; Wallis,
2 S.W.3d at 303.  Because allocation is
central to the claim for coverage, an insured=s failure to carry the burden of proof on allocation is fatal to the
claim.  Allison, 98 S.W.3d at 258;
See also Wallis, 2 S.W.3d at 303B04.  Although a plaintiff is not
required to establish the amount of his damages with mathematical precision,
there must be some reasonable basis upon which the jury=s finding rests.  State Farm
Fire & Cas. Co. v. Rodriguez, 88 S.W.3d 313, 321 (Tex. App .CSan Antonio 2002, pet. denied); Kelly v. Travelers Lloyds of Tex.
Ins. Co., No. 14-05-00825-CV, 2007 WL 527911, at *3 (Tex. App.CHouston [14th Dist.] February 22, 2007, no pet.).

The initial reported damage
from the soot was considered a covered event under the insurance contract,
labeled in the insurance policy as Asudden and accidental damage from smoke.@  However, Farmers Group now
claims that non-covered perils (i.e., not sudden or accidental),
including candles and the fireplace could have caused or contributed to the
alleged loss.








Appellants attached only
excerpts from Miller=s deposition
in support of its response.[6]  In these excerpts, Miller stated that there
were multiple sources of soot and that the heat exchangers were probably the
main source, basing this opinion on his discussion with Tammy and his finding
of soot in the house. Miller reiterated this point when he was asked what
scientific evidence he had to support his opinion that the soot was either
partially or fully the result of incomplete combustion in the heat exchangers,
and he stated that the opinion was based on the Ahistory@ as related
to him by Tammy and the finding of soot in the house.  Miller never provided actual test results
that could have definitively confirmed his opinion.[7]








While Farmers Group initially
determined, given the facts at that time, that the loss was covered under the
insurance policy,[8]
it now claims that Miller=s admission
that he thinks that there were multiple sources shows that Appellant presented
no evidence that the soot came from a covered loss or, even if the soot were a
covered loss, that all of the loss would be covered.  Farmers Group further asserts that Appellants
presented no evidence that Farmers Group owed any more money than it had
already paid.  We conclude that the
evidence presented the possibility of multiple sources of the soot, but that
Appellants failed to segregate the loss between covered and non-covered
events.  Thus, because Appellants have
not satisfied their burden under the concurrent causes doctrine, we hold that
there is no evidence that Farmers Group breached its contract with Appellants
by not paying additional amounts on Appellants= claim or by failing to make any additional repairs.

2. Failure to Complete Appraisal Process








Appellants also assert that
Farmers Group breached its contract by abandoning the appraisal process once
invoked because it only intended to cause further delay in the investigation
process.[9]  There is some evidence that Farmers Group
breached the appraisal provision by failing to further comply with the
provision once the suit to appoint an umpire had been filed.  The evidence demonstrates that Farmers Group=s failure to participate in its own suit resulted in a dismissal of
the case for want of prosecution.  As a
result, an umpire was never appointed and an amount of loss was never set by
the appraisers.  There is at least some
evidence to raise a fact issue that by failing to follow through with the
process and comply with the remaining terms of the provision, Farmers Group
breached the appraisal provision, resulting in damages to Appellants, including
costs and fees associated with the appraisal case.








Farmers Group argues that
there is no breach because Farmers Insurance Exchange (AFIE@) issued the
insurance policy but Farmers Insurance Group (AFIG@) filed the
suit to appoint an umpire; thus, FIG could not breach a contract to which it was
not a party.  Regardless of which entity
filed the suit, the appraisal process was invoked by FIE, which participated in
the process to an extent and then later abandoned it altogether.  In other words, failure to litigate the
lawsuit was not the only act that constituted abandonment or breach of the
appraisal provision.  FIE invoked the
appraisal provision but then never set a cash value on the loss, and this
inaction is an abandonment of the process by FIE, which is some evidence to
raise a fact issue that Farmers Group breached the appraisal provision and
caused damages to Appellants arising from the appraisal process.








Although Appellants also had
the right to enforce the appraisal provision, failing to do so does not
preclude a claim for damages resulting from a breach of that provision.  See Standard Fire Ins. Co. v. Fraiman,
588 S.W.2d 681, 683 (Tex. Civ. App.CHouston [14th Dist.] 1979, writ ref=d n.r.e.) (holding that a claim for breach of an appraisal provision
was not a repudiation of the policy, but instead a breach of a procedural
provision, and that the insured=s right to specifically enforce an appraisal provision did not
preclude a cause of action for breach of that provision).  The policy behind an appraisal provision is
to expedite claims, and to not allow a claim for damages would allow insurance
companies to breach the appraisal provision without fear of consequence.  Id. Accordingly, we hold that the
trial court erred in granting Farmers Group=s no-evidence summary judgment as to the breach of the insurance
contract=s appraisal provision.[10]

3. Examination Under Oath

Appellants argue that Farmers
Group breached the insurance contract by demanding that Tammy take an EUO past
the time allowed by law and the insurance contract.  Martinez initially objected to the timeliness
of the EUO request but nevertheless advised Tammy to submit to it.








In support of their argument,
Appellants point out the insurance contract=s investigation guidelines. The timing guidelines in the insurance
contract are very similar to those provided by the Texas Insurance Code (ACode@).[11]  Under the contract, Farmers had fifteen days
to (1) acknowledge receipt of the claim; (2) begin any investigation of the
claim; and (3) specify the information that Appellants must provide in
accordance with the AYour Duties
After Loss@ section of
the contract.  The provision goes on to
state that Farmers Group may Arequest more information, if during the investigation of the claim
such additional information is necessary.@  To understand the effect of
this contract provision, we turn to case law interpreting almost identical
provisions under the Code.  See In re
Foremost County Mut. Ins. Co., 172 S.W.3d 128, 132 (Tex. App.CBeaumont 2005, orig. proceeding) (holding that an insurance company
did not waive its right to an EUO by requesting it more than fifteen days from
the initial claim).

Under the plain language of
the insurance contract and the Code, the insurer has the right to request
additional information during the investigation, which it can choose to do in
the form of an EUO.  See id.  There is no requirement that the EUO request
must be within fifteen days of the claim, only that the insurer must begin the
investigation within fifteen days.  See
id.








Appellants do not complain
that the EUO would not have assisted Farmers Group in its investigation nor do
they argue that Farmers failed to acknowledge the claim or begin investigation
within fifteen days.  Appellants contend
only that Farmers Group=s EUO
request was untimely.  However, with no
requirement that the request for an EUO come within a specified time table, the
request in this case, without more, is no evidence of a breach of the insurance
contract. 

4. Failure to Properly Investigate

As stated in the factual
background section, Farmers Group initially paid Appellants claim by funding
remediation and repair, including Appellants= temporary relocation, carpet replacement, repainting the ceiling, and
cleaning the home=s
contents.  However, Appellants were
dissatisfied with Farmers  Group=s investigation and claimed that their house was still contaminated
with soot.  Appellants were very general
with regard to this claim in their response to Farmers Group=s summary judgment, and now on appeal, it appears that Appellants= main contention is that Farmers Group was dilatory in hiring its own
Certified Industrial Hygienist (ACIH@) to inspect
Appellants= house and
develop a remediation plan.








Appellants do not argue that
Farmers Group altogether failed to investigate. 
In fact, they attached evidence to their response showing that Farmers
Group investigated the furniture and carpet multiple times and requested an EUO
from Appellants as part of the investigation process.  Appellants instead contend that Farmers Group
failed to properly investigate only by not hiring a CIH earlier than it did.








The insurance policy requires
Farmers Group to investigate the claim, which it did, but the policy does not
set out standards for the investigation. 
We decline to add these terms to the contract.  See Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 162 (Tex. 2003) (stating that the court should neither rewrite
nor add to the language of the insurance contact).  Likewise, Appellants provided no authority,
either by expert or case precedent, of any standard of insurance investigation
that would render Farmers Group=s investigation a breach of contract. 
Standards for insurance investigations are available, however, and set
forth in cases dealing with the duty of good faith and fair dealing.  See State Farm Fire & Cas. Co. v. Simmons,
963 S.W.2d 42, 47 (Tex. 1998).  Under
this line of cases, it is the insurer, not the insured, that has the duty to
reasonably investigate the claim.  See
id.  However, Appellants did
not make a bad faith argument in their response or in their brief.[12]  Therefore, we hold that Appellants= evidence regarding the time it took for Farmers Group to hire a CIH
is no evidence of a breach of contract.

Negligent
Misrepresentation

1. Farmers Insurance Group=s Suit to Appoint an Umpire

Appellants argue that FIG,
who did not issue the insurance policy to Appellants, filed a Abogus@ lawsuit to
appoint an umpire as part of the appraisal process, thereby causing unnecessary
delays in the investigation.  To prove a
claim for negligent misrepresentation, Appellants must have presented evidence
that (1) Farmers made a representation in the course of action in which
Appellants had a pecuniary interest, (2) the representation was false, (3)
Farmers failed to exercise reasonable care in communicating the information,
and (4) Appellants suffered damages by justifiably relying on the
information.  See Sloane, 825
S.W.2d at 442.  Farmers Group challenged
the second, third, and fourth elements.








To show evidence of a false
representation (element two), Appellants presented FIG=s suit to appoint an umpire. 
Farmers Group maintains that FIG had no privity of contract with
Appellants, but this assertion is contradicted by the petition in that suit, in
which FIG stated that it had a homeowner=s policy in effect with Tammy at the time of the incident and that FIG
in fact invoked the appraisal provision of that contract.  However, FIE was the Farmers Group entity
that actually issued the contract and also invoked the appraisal
provision.  There was some confusion over
whether FIG was a business entity at all, but we hold that regardless of that
determination, there is some evidence, as shown in the petition, to raise a
fact issue that a representative entity of Farmers Group made false
representations to Appellants.

Regarding element three,
however, Appellants presented no evidenceCand never even mentionedCthat Farmers Group failed to exercise reasonable care in communicating
the information.  Thus, the trial court
properly granted Farmers Group=s no-evidence motion on this claim because Appellants failed to
present evidence on at least one of the challenged elements. See Tex. R. Civ. P. 166a(i).

2. Examination Under Oath

Appellants argue that Farmers
Group made negligent misrepresentations by requesting and taking an alleged
untimely EUO.  However, we previously
held that Farmers Group made a reasonable request for an EUO during its
investigation, and Appellants presented no additional evidence to support a
different conclusion.  Without evidence
that Farmers Group improperly requested the EUO, Appellants cannot prove that
Farmers Group made any false representations regarding the EUO.  Accordingly, we hold that the trial court
properly granted the no-evidence summary judgment as to this claim.  See id.








Deceptive Trade
Practices Act

Appellants argue that, during
its investigation, Farmers Group violated the laundry list and
unconscionability provisions of the DTPA. 
See Tex. Bus. & Com. Code Ann. '' 17.46, .50 (Vernon Supp. 2007).

1. Section 17.46

To maintain a cause under the
laundry list provisions of the DTPA, Appellants must have presented evidence
that Farmers Group used or employed a false, misleading, or deceptive act or
practice that is specifically enumerated in subsection (b) of section 17.46 and
that Appellants relied on these acts to their detriment.  See id. ' 17.50(a)(1).  Appellants
argued that several of the enumerated misrepresentations applied to Farmers
Group=s actions.[13]  Both Farmers Group=s no-evidence and traditional summary judgment arguments are
applicable to the laundry list analysis; we will address these arguments
separately.

A.  Section 17.46 B No-Evidence Analysis 








First, Appellants argue that
Farmers Group misrepresented facts as to who could take the EUO and when.  Although not specifically stated in
Appellants= brief or
response, it appears from Martinez=s affidavit attached to Appellants= response that Appellants are contending that the insurance contract
was not issued by Farmers Insurance Exchange (AFIE@) and
therefore FIE had no authority to request or take the EUO.  All Appellants presented as evidence to
support this claim was Martinez=s statement in her affidavit that when Appellants received a copy of
the insurance policy, Ait was clear
that Farmers Insurance Exchange did not issue the policy.@  Appellants failed to point out
or present any evidence to support this theory that it was clearly not FIE that
issued the policy.[14]  This statement is conclusory and is no
evidence of a misrepresentation.








Second, Appellants claim that
Farmers Group misrepresented the health dangers of Appellants= home after it was cleaned and decontaminated.  Appellants provided no evidence as to the
health conditions of the house,[15]
and without evidence showing alleged adverse health conditions, Appellants have
no claim of a misrepresentation.  In
other words, Appellants cannot prove that Farmers Group misrepresented a fact
because Appellants provided no evidence of that fact=s falsity.

Third, Appellants argue that
Farmers Group misrepresented facts as to who could ask for an appraisal.  Appellants point to no statement or action by
Farmers Group that would constitute a misrepresentation.  Additionally, because Appellants provided no
evidence that someone other than FIE issued the insurance policy, they have
also failed to provide evidence that someone other than FIE had the authority
to invoke the appraisal provision under the policy.

In the last of their general
allegations, Appellants argue that Farmers Group misrepresented its ability to
clean soft goods and personal property, that Farmers would abide by the
decision of an umpire, and that documents such as procedure manuals
existed.  Appellants made no attempt in
their response and make no attempt on appeal to point to any facts that support
these broad allegations.  Because they
have presented no evidence, these arguments must fail. 








Appellants further list
fourteen specific representations that are taken from Tammy=s affidavit that they argue constitute actionable misrepresentations
under section 17.50(a)(1).[16]  Because we take all evidence offered by the
nonmovant as true, we will assume that Farmers Group made these representations
to Appellant.  See Crawford v. Ace
Sign, Inc., 917 S.W.2d 12, 14 (Tex. 1996).

Six of the representations
(numbers six through ten and twelve in Appellants= brief) recount conversations with Sims and other Farmers Group
representatives, in which Tammy claims the representatives refused to replace
the carpet and were less than kind to Tammy throughout this process.  The representations as stated in Appellants= response are as follows:

$                  
Greg Sims said I did not need the carpet replaced,
but that it could be cleaned.  He further
said that I was just trying to get new carpet.

 

$                  
Greg Sims said that the carpet padding did not
need to be replaced because there was nothing wrong with it even though it was
obvious that soot had penetrated to the carpet pad.  He told me I was uneducated and did not know
what I was talking about.

 

$                  
Greg Sims told me I had to wait two weeks while
he went on vacation before he would inspect the carpet.

 








$                  
I called Mr. Sims=[s]
supervisor, Debbie Scrubbs, and she agreed that Mr. Sims deserved his vacation
and that I would have to wait, she also said she agreed with Mr. Simm=s
[sic] assessment and that I was just trying to get new carpeting.

 

$                  
Greg Sims insisted that my personal property was
clean and that I had to take it back, but I told him that just like the carpet
it was not clean.  He got Ain my
face@ and
told me I was stupid and ignorant and that I had no choice but to take the
stuff back.

 

$                  
Greg Sims refused to return my calls, so I had
Dale call him and ask him to call me.  He
told me that the insurance would not pay for hotel, even though [my] house was
still being cleaned.  He said everything
is clean, you can go back home.  I called
Debbie, Greg=s
supervisor, and she told me in an angry voice that whatever Greg said she
agreed with and Ajust
deal with it.@

 

To the extent that the
central complaint derived from these allegations is that Farmers Group
misrepresented its ability to clean the carpet, we conclude that Appellants
failed to produce any evidence.  Tammy
admitted that Farmers Group attempted to clean the carpet and that when that
attempt proved futile, Farmers Group replaced the carpet.  Therefore, Appellants have presented evidence
only that Farmers Group was incorrect in its original assessment, not that it
misrepresented its ability to clean the carpet.[17]








In three other
representations (numbers two, three, and eleven in Appellants= brief), Appellants claim that Sims misrepresented the safety and
health risks of living in the house after it was cleaned.  These representations are as follows:

$                  
Greg Sims told me that the soot was not harmful
and it was safe to stay in the house.

 

$                                                                  
Greg Sims told me that it was safe to stay in the
house despite the fact that there were obviously problems with the heaters.   

 

$                  
Greg Sims said that the house posed no danger and
we could stay there even though there was no carpet.

 

As stated above, Appellants
failed to present any evidence regarding the health dangers specific to
Appellants= house or
risks to Appellants by moving back into the house; thus, Appellants presented
no evidence of a misrepresentation that the house was free of health risks.

In Appellants= thirteenth listed representation, Tammy claims that Farmers Group
misrepresented its duty to investigate the claim.  As stated in Tammy=s affidavit, the representation is as follows:

$                  
Greg Sims said that the insurance company does
not have to test [the] home [and that the] homeowner should have [the] home
tested if she wants it tested.

 








While
this may be evidence of some misrepresentation,[18]
it is no evidence of a laundry list violation as listed by Appellants.

 

B.  Section 17.46 B Traditional Summary Judgment Analysis

The last four representations
(numbers one, four, five, and fourteen in Appellants= brief) are restated breach of contract claims, most of which were
discussed in the preceding sections.  The
representations are as follows:

$                  
Farmers [Group=s] claims adjuster, Greg
Sims, told me that my insurance would take care of everything and get my house
back into the condition it was in before the soot leaked.

 

$                  
Greg Sims told me that my personal property and
house would be cleaned up Ajust like new.@

 

$                  
Greg Sims said the fans could be cleaned without
taking them down, even though I knew they could not be properly cleaned that
way.  He said they were clean, but they
weren=tCYou
could still see black stuff all over them.








$                  
The written estimates on
proposals submitted to me indicated that my home would be cleaned and items
replaced and/or fixed.  They were not.

These statements that Farmers
breached the insurance contract by acts of nonfeasance, without more, are not
proper causes of action under DTPA.  See
Crawford, 917 S.W.2d at 14; Southstar Corp. v. St. Paul Surplus Linens
Co., 42 S.W.3d 187, 194 (Tex. App.CCorpus Christi 2001, no pet.) (holding that a breach of an insurance
contract claim for failing to defend insured, without more, is not actionable
under the DTPA).  When the essence of a
claim is that one party made certain representations that it would perform
under the contract and then failed to do so, that is not in itself actionable
under the DTPA.  See Crawford, 917
S.W.2d at 14B15.  The reasoning is that a plaintiff=s damages in these situations are not caused by the statements
themselves, but rather by the defendant=s failure to act.  See id.

Following that reasoning,
Farmers Group=s
representations that it would completely repair the home and recondition it to
be Ajust like new@ did not
cause Appellants=
damages.  Appellants= damages, if any, were caused by Farmers Group=s failure to perform.  Thus,
Farmers Group has negated these claims as a matter of law.  See Southstar Corp., 42 S.W.3d at 194
(holding that because claims were mere breach of contract claims, movant had
negated DTPA claims as a matter of law).








2. Unconscionability

To maintain a cause asserting
unconscionable actions under the DTPA, Appellants must have presented evidence
that some unconscionable action or course of action by Farmers Group was a
producing cause of Appellants= damages.  See Tex. Bus. & Com. Code Ann. ' 17.50(a)(3).  Under the
DTPA, an Aunconscionable@ action or course of action is defined as an act or practice which, to
a consumer=s detriment,
takes advantage of the lack of knowledge, ability, experience, or capacity of
the consumer to a grossly unfair degree. 
Tex. Bus. & Com. Code Ann. ' 17.45(5) (Vernon Supp. 2007). 
To prove an unconscionable action or course of action, Appellants must
show that Farmers Group took advantage of their lack of knowledge and that the
resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated.  See Bradford v. Vento, 48 S.W.3d 749,
760 (Tex. 2001); Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 745
(Tex. App.CFort Worth
2005, no pet.).  The relevant inquiry
examines the entire transaction, not Farmers Group=s intent.  See Chastain v.
Koonce, 700 S.W.2d 579, 583 (Tex. 1985); Head, 159 S.W.3d at 745.








Appellants list multiple
instances in which they claim Farmers Group=s actions were unconscionable. 
Specifically, Appellants complain that they had no say in the
investigation, that the house was unsafe and contained soot, that Farmers Group
requested an untimely EUO, and that Farmers Group filed a Abogus@ appraisal
lawsuit.   However, Appellants make no
attempt to articulate how Farmers Group took advantage of them to an unfair
degree other than to make the conclusory statement that Athe timetable demonstrates that Appellants were helpless.@  The only action Appellants
have presented any evidence on is the abandoned appraisal processCa process in which Appellants were represented by counsel.  And, because Appellants were represented by
counsel, they were not Ahelpless@ as they described.

In our previous discussion of
the appraisal process, we held that even though Appellants, too, could have
enforced the appraisal provision and chose not to do so, they were not
precluded from bringing a cause of action. 
However, while this reasoning might not preclude a claim for the breach
of the appraisal provision, it does militate against the notion that Appellants
were Ahelpless.@  Because they had this option and because they
were represented by counsel during this process, we hold that Appellants
presented no evidence that they were taken advantage of to a grossly unfair
degree.  See Head, 159 S.W.3d at
745.

Conclusion








 We overrule Appellants= second issue in part and sustain in part, holding that the trial
court erred in granting Farmers Group=s no-evidence summary judgment as to the breach of the appraisal
provision.  To the extent we addressed
Farmers Group=s
traditional motion for summary judgment, we overrule Appellants= third issue and conclude that Appellants= misrepresentation claims regarding breach of the insurance contract
were not actionable under the DTPA.

CONCLUSION

For these reasons we reverse
the trial court=s judgment
as to the breach of the appraisal provision and remand the case to the trial
court for further proceedings.  See Tex. R. App. P. 43.2(d).  We affirm the trial court=s judgment as to all other claims regarding Farmers Group and as to
the Kaisers= no-evidence
motion for summary judgment.

 

 

DIXON
W. HOLMAN

JUSTICE

 

 

PANEL B:  DAUPHINOT, HOLMAN, and GARDNER, JJ.

 

DELIVERED:  December 13, 2007   











[1]See Tex. R. App. P. 47.4.





[2]Farmers
Insurance Exchange, a Farmers Group entity, issued the insurance policy.





[3]Although
the insurance policy was issued and the appraisal provision invoked by Farmers
Insurance Exchange, Farmers Insurance Group actually filed the suit in district
court to appoint an appraisal umpire.  





[4]Swafford
failed, however, to provide any context for this finding, such as what the
levels were before running the unit.





[5]Appellants
also attached a clarification document supplementing Miller=s
deposition.  In that document, Miller
states that the holes in the furnaces, which he admitted that he did not
inspect in detail, and the history of the incident as related to him by Tammy
support the Alikelihood@ that
the furnaces caused the damages and that his observations did not indicate
another plausible source.  He also states
that he believes that candles were not the cause of carbon monoxide
symptoms.  This clarification establishes
few more details than the excerpts attached to the motion.  The end result remains that Miller conducted
no tests to determine the source of the soot and any opinion as to the source
is based on an assumption that a combustion incident occurred.

Miller also stated that elevated levels of carbon monoxide usually
come from leakage in the heating system. 
However, there was no evidence in the excerpts provided that Miller ever
tested for carbon monoxide or what elevated levels he is referring to.  Further, Miller never connected this
statement to any evidence regarding soot.





[6]Farmers
Group attached Miller=s
entire deposition to its combined motion for summary judgment.  But because Farmers Group filed only on
no-evidence grounds as to the breach of contract claims, we will not consider
any evidence attached to Farmers Group=s motion on the issue of
breach of contract, including the entire Miller deposition record, unless that
evidence creates a fact issue.  See
Binur v. Jacobo, 135 S.W.3d 646, 651 (Tex. 2004).





[7]Appellants
attached to their response to Farmers Group=s motion a table summary of
tests performed by Farmers Group=s inspectionCnot
Miller=sCthat
shows that there was discharge from the heater but also shows that there was
some soot from the fireplace, grease, and candles.  Furthermore, the table summary shows that the
testing was unable to rule out candles, grease, and the fireplace as sources of
soot in several areas of the house.





[8]Farmers
Group now makes no claim as to what the actual cause was, just that Appellants
never presented evidence that definitively identified the source.





[9]The
appraisal provision states in part that AIf you and we fail to agree
on the actual cash value, amount of loss or the cost of repair, either can make
a written demand for appraisal.  Each
will then select a competent, independent appraiser and notify the other of the
appraiser=s
identity within 20 days of receipt of the written demand.  The two appraisers will choose an
umpire.  If they cannot agree upon an
umpire within 15 days, you or we may request that the choice be made by a Judge
of a District Court of a judicial district where the loss
occurred. . . .@





[10]Appellants
argue that Farmers Group breached the appraisal provision by failing to
complete the appraisal process and by not hiring a qualified appraiser.  Because we concluded that Farmers Group breached
the appraisal provision by abandoning the appraisal process, we need not
address whether Appellants provided some evidence of Farmers Group=s
failure to appoint a qualified appraiser.





[11]Article
21.55, which at the time of this lawsuit provided prompt payment guidelines
almost identical to those in the insurance contract, was repealed in 2005 for
purposes of re-codification only. See
Act of June 21, 2003, 78th Leg., R.S., ch. 1274, ' 26,
2003 Tex. Gen. Laws 3611, 4138.  No
substantive changes were made to the prompt payment guidelines, which are now
codified at section 542.055 of the Texas Insurance Code. See Tex. Ins. Code Ann. '
542.055 (Vernon 2007); Act of June 21, 2003, 78th Leg., R.S., ch. 1274 ' 27,
2003 Tex. Gen. Laws 3611, 4139.

 





[12]Appellants
mention in the last sentence of both their response to Farmers Group=s
combined motion for summary judgment and in their brief on appeal that Farmers
Group breached their duty of good faith and fair dealing, but they failed to
argue or present any discussion at all in the body of their brief regarding
these contentions.  Therefore, we decline
to address these issues in our decision. 
See Tex. R. App. P.
38.1(h).





[13]Appellants
specifically listed subsections 1, 2, 3, 5, 12, 14, 22, and 23, which has now
been renumbered as A24.A  See Tex.
Bus. & Com. Code Ann. ' 17.46.





[14]In
their reply brief, Appellants point to Farmers Group=s
amended answer to the trial court, in which Farmers Group stated that FIE had
no privity of contract with Appellants. 
However, Appellants have failed to produce any evidence that this
representation caused any harm.





[15]The
trial court granted Farmers Group=s motion to strike expert
Miller=s
testimony or opinions on Amedical
causation or physical injuries from soot in general or [Appellants=]
alleged physical problems arising from the soot alleged to be present in this
case.@ 





[16]Appellants
failed in their response and again on appeal to connect any of these fourteen
representations as well as the general allegations discussed in the preceding
paragraphs to any of the section 17.46 violations listed in their brief.





[17]To
the extent these are complaints regarding Farmers Group=s
failure to repair the carpet in a timely manner, we hold that Appellants failed
to argue this under the Insurance Code.





[18]Appellants
mention that through its actions, Farmers Group is also in violation of the
Insurance Code, but Appellants only point this out in the beginning of their
DTPA argumentCstating
that a violation of the Insurance Code is also a DTPA violationCand
again in the last sentence of their response and brief.  However, Appellants failed to make any
argument regarding this misrepresentation and specific Insurance Code
violations; thus, we will not address this issue in our decision.  See Tex.
R. App. P. 38.1(h).  Moreover,
Appellants specifically state that this is a laundry list violation, and the
Texas Business Code is very specific that Afalse, misleading, or
deceptive acts or practices@ for the purposes of section
17.50(1)(a) are limited to the specifically enumerated misrepresentations in
section 17.46(b).  See Tex. Bus. & Com. Code Ann. ' 17.46(d).  Thus, because Appellants argue this only as a
laundry list violation, we hold that they have presented no evidence.